M.K.A.W., T.S.R.W., B.B.R.W., A.W.,
B.W.,

          Plaintiffs,

   v.                                             Case No. 24-cv-0741-bhl

WALWORTH COUNTY, et al,

          Defendants.

## ORDER GRANTING MOTION TO DISMISS

      On June 13, 2024, Plaintiffs, two foster parents and their three minor daughters, filed this lawsuit to recover damages arising from the sexual assaults of the three daughters by Defendant J.T., a foster child placed in the family's home. To protect their identities, Plaintiffs are identified by their initials: the parents are A.W. and B.W. and the minor daughters are M.A.K.W., T.S.R.W., and B.B.R.W. (ECF No. 1 ¶9.) In addition to suing J.T., Plaintiffs also pursue claims against Defendants Walworth County, two county agencies (Walworth County Child Protective Services and Walworth County Child Support Services), and four Walworth County employees (Angela Farmakis, Kayla Belfield, Alison Mansky, and Derek Alcala). (*Id.* ¶¶12–18.) The complaint also names the County's insurer, Wisconsin Municipal Mutual Insurance Company, along with an unidentified ABC Insurance Company and John Does 1–10. (*Id.* ¶¶19–21.)

      Plaintiffs seek to litigate their claims in federal court by invoking 42 U.S.C. § 1983 and asserting that the County, its agencies, and its employees (collectively, the "County Defendants") violated Plaintiffs' constitutional rights. They sue the County Defendants individually and on a municipal liability theory under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiffs also invoke the Court's supplemental jurisdiction to pursue claims against all the defendants under various state law theories. (ECF No. 1 ¶7.)

      On August 16, 2024, the County Defendants moved to dismiss Plaintiffs' federal claims, insisting that Plaintiffs have not plausibly alleged a constitutional violation. (ECF Nos. 19 & 20.)

Having reviewed the parties' briefing and the applicable caselaw, the Court agrees. While the circumstances of this case are unquestionably tragic and likely give rise to state law tort liability, Plaintiffs' allegations do not support claims for a constitutional violation. Accordingly, the County Defendants' motion will be granted, and Plaintiffs' federal claims dismissed with prejudice. The Court will also relinquish jurisdiction over Plaintiffs' state law claims and dismiss them without prejudice, allowing Plaintiffs to pursue the remainder of their case in state court.

## FACTUAL BACKGROUND

Defendant Walworth County is a Wisconsin municipal corporation. (ECF No. 1 ¶12.) Defendants Walworth County Child Protective Services and Child Support Services are agencies operated by the County. (*Id.* ¶¶13–14.) Defendant Kayla Belfield is an employee of Walworth County Child Protective Services. (*Id.* ¶16.) Defendants Alison Mansky and Angela Farmakis are employed by Walworth County Child Protective Services as Children and Families Division Ongoing Supervisor and Foster Care Coordinator, respectively. (*Id.* ¶¶15, 17.) Defendant Derek Alcala is an employee of Walworth County and/or Walworth County Child Support Services. (*Id.* ¶18.)

A.W. and B.W. are residents of Lake Geneva, Wisconsin in Walworth County. (*Id.* ¶9.) They have three minor daughters: M.A.K.W., T.S.R.W., and B.B.R.W. (*Id.* ¶¶9, 35–40.) A.W. and B.W. also serve as foster parents. (*Id.* ¶¶27–28.) In December 2021, Walworth County Child Protective Services placed a thirteen-year-old foster child, J.T., in their home, where he resided with the family until April 2022. (*Id.*) When J.T. arrived, the County Defendants did not provide the foster family with copies of J.T.'s medical records or information about his prior foster home placements or criminal history. (*Id.* ¶33.)

While J.T. was living with his foster family, he engaged in troubling behaviors—viewing pornography, using inappropriate language, and even threatening suicide. (*Id.*) A.W. reported his conduct to Belfield and Mansky. (*Id.* ¶29.) She also notified Alcala, who served as J.T.'s Child Support Services worker, and made multiple requests for family therapy to both Walworth County Child Protective Services and Walworth County Child Support Services. (*Id.* ¶¶30–31.) A.W. also sought background information about J.T. from both county agencies but received no records and was instead told there was nothing concerning in J.T.'s past. (*Id.* ¶¶33–34.) A.W. and B.W. suspect that J.T. had a record of problematic behavior and may have himself been previously the victim of a sexual assault. (*Id.* ¶45.)

On or around April 15, 2022, one of A.W.'s daughters told A.W. that she had been sexually assaulted by J.T. (*Id.* ¶35.) A.W. and B.W. later discovered that J.T. had also sexually assaulted their other two daughters. (*Id.* ¶36.) As a result of the assaults, all three children developed mouth sores and permanently contracted herpes (HSV-1). (*Id.* ¶44.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint must contain a "short and plain statement of the claim showing that [the plaintiffs are] entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must do more, however, than "recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint survives a 12(b)(6) motion when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The complaint will be dismissed if it fails to allege sufficient facts to state a claim on which relief may be granted. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ANALYSIS

The County Defendants seek dismissal of Plaintiffs' federal claims. (ECF Nos. 19 & 20.) They argue that Plaintiffs have not alleged facts sufficient to support a finding that any of the County Defendants violated Plaintiffs' constitutional rights as required to support a claim against them individually under 42 U.S.C. § 1983 or for municipal liability under *Monell*. (ECF No. 20 at 6–18.) Because the Court agrees that Plaintiffs have failed to allege a constitutional violation, the County Defendants' motion to dismiss will be granted.

## I. Plaintiffs Have Not Alleged a Constitutional Violation Sufficient to State a Claim Under Section 1983 or *Monell*.

In Count I of their complaint, Plaintiffs invoke 42 U.S.C. § 1983 and assert claims against the individual County Defendants for "deliberate indifference" in violation of the Fourteenth Amendment. (ECF No. 1 ¶¶56–65.)[1] In support of this claim, Plaintiffs contend that the County Defendants violated their "constitutionally protected right to be free from unnecessary harm and to be made fully aware of the risks of fostering J.T." (*Id.* ¶57.) In Count III, Plaintiffs assert a claim for municipal liability under *Monell* based on violations of the same purported rights. (*Id.* ¶¶73–83.) Both counts require Plaintiffs to allege, and ultimately prove, an underlying constitutional violation. *See First Midwest Bank ex rel. LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). Defendants argue that Counts I and III must be dismissed because Plaintiffs have no constitutional right "to be free from unnecessary harm" generally or, more specifically, "to be made fully aware of the risks of fostering" a specific child. (*See* ECF No. 20 at 6–12.)

As an initial matter, Plaintiffs repeatedly characterize their claim as one for "deliberate indifference." (ECF No. 1 at 10; ECF No. 22 at 6–10.) This is a sloppy misuse of terminology. "Deliberate indifference" is the standard used in the Eighth Amendment context when a prisoner claims that corrections officers or prison medical staff intentionally disregarded the prisoner's basic needs. *Board v. Farnham*, 394 F.3d 469, 477–78 (7th Cir. 2005). A prison official violates a convicted criminal's Eighth Amendment rights when he or she is "deliberately indifferent" to a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The phrase is also sometimes used in the Fourteenth Amendment context when a similar claim arises for pretrial detainees, *see Board*, 394 F.3d at 478, although the applicable standard in that context is more accurately stated as "objective reasonableness," *see Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Terminology errors aside, Plaintiffs' factual allegations make clear they are attempting to assert a Fourteenth Amendment substantive due process claim against the County Defendants.

---

[1] Paragraph 1 also refers to violations of the Fourth and Eighth Amendments. (ECF No. 1 ¶1.) Plaintiffs do not, however, explain how either amendment has any application to the facts in this case. The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. The Eighth Amendment prohibits excessive fines or bail and cruel and unusual punishment. U.S. Const. amend. VIII. This case involves neither scenario. Given their inapplicability, coupled with Plaintiffs failure to address or develop claims under either provision, the Court will assume Plaintiffs cited both amendments in error.

### A. *DeShaney, Collins*, and the Limits of Substantive Due Process.

The Due Process Clause of the Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. While procedural by its very terms, courts have recognized that the Due Process Clause has a "very limited" substantive component as well. *See Lukaszczyk v. Cook County*, 47 F.4th 587, 599 (7th Cir. 2022) (quoting *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019)). Defining the scope of that substantive component has proved difficult. The Seventh Circuit has emphasized the "slippery nature" of this right and identified two elements to a substantive due process claim: (1) the government's violation of a fundamental right or liberty; and (2) a violation that is both arbitrary and irrational. *Campos*, 932 F.3d at 975 (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). As to the first element, courts should be "reluctant to expand" the fundamental rights recognized in existing caselaw. *See Robbin v. City of Berwyn*, 108 F.4th 586, 589 (7th Cir. 2024) (citing *Campos*, 932 F.3d at 975); *Glucksberg*, 521 U.S. at 720 (enumerating the limited fundamental rights recognized by the Supreme Court). And, as for the second element, the alleged conduct must be so "arbitrary and irrational" as to "shock the conscience." *Nelson v. City of Chicago*, 992 F.3d 599, 604 (7th Cir. 2021) (citations omitted). In applying these elements, courts must be particularly mindful that not every tort committed by a state actor or employee rises to the level of a substantive due process violation; a plaintiff seeking to assert a substantive due process claim "must meet a high standard." *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012). This is true, even when the underlying alleged conduct is "abhorrent;" otherwise, courts risk improperly "constitutionalizing every tort committed by a public employee." *Id*. (citing *Lewis*, 523 U.S. at 846, 854).

The Supreme Court outlined significant limitations on substantive due process claims more than 30 years ago in a pair of cases: *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) and *Collins v. City of Harker Heights*, 503 U.S. 115 (1992). Both precedents help guide the Court's analysis of Plaintiffs' attempt to assert constitutional claims.

*DeShaney* originated in this district. It involved a 4-year-old boy who was viciously beaten by his father, fell into a life-threatening coma, and was "expected to spend the rest of his life confined to" a mental institution. 489 U.S. at 191–93. Based on these injuries, the boy and his mother filed suit against Winnebago County, its Department of Social Services, and various county

employees, insisting they had violated the boy's substantive due process rights by failing to act to protect him even after receiving notice on multiple prior occasions of the father's physical abuse. *Id*. at 193. This Court granted summary judgment to the defendants, concluding the allegations did not support a substantive due process claim, and the Seventh Circuit affirmed. *Id*.

After granting certiorari, the Supreme Court agreed, holding that the plaintiffs could not maintain a substantive due process claim because they failed to allege that the defendants violated a fundamental right. *See id.* at 195. The Court explained that nothing in the Constitution "requires the State to protect the life, liberty, and property of its citizens against invasion by private actors," like the abusive father. *See id.* It further emphasized that the Due Process Clause does not confer a general affirmative right to governmental aid, and it "does not transform every tort committed by a state actor into a constitutional violation." *Id.* at 196, 202 (citations omitted). The Court also acknowledged that, given the underlying facts, judges and lawyers might be understandably "moved by natural sympathy . . . to find a way for [the plaintiffs] to receive adequate compensation for the grievous harm inflicted upon them." *Id.* at 202–03. But courts should resist this impulse and remember that constitutional claims do not arise when the person who inflicted the harm is a private actor, not the state. *Id.* at 203.

The Supreme Court then carved out two limited exceptions to its rule that there is no substantive due process right to governmental aid. First, the Court explained that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being," creating what is now referred to as the special relationship exception. *Id.* at 199–200. In this scenario, "the State's affirmative act of restraining the individual's freedom to act on his own behalf" constitutes a deprivation of liberty, which "trigger[s] the protections of the Due Process Clause." *Id.* at 200. It emphasized that this exception applies only when the individual is in the custody of the state. *Id.* at 201. Second, the Court also recognized that a substantive due process violation may arise when the State creates a danger to an individual or renders an individual more vulnerable to a danger. *Id.* This is referred to as the state-created danger exception. Again, the Court took pains to emphasize the limits of this exception and made clear that a state actor's mere awareness of a potential danger is insufficient to support a substantive due process claim under this exception. *See id.*

Four years after *DeShaney*, the Supreme Court decided *Collins* and detailed additional limits on substantive due process claims. In *Collins*, a widow sued the City of Harker Heights after her husband, a City sanitation worker, died on the job. 503 U.S. at 117–18. She claimed the City violated her husband's due process right to a reasonably safe work environment. *Id.* at 125–26. Unlike *DeShaney*, the tortfeasors in *Collins* were state actors. *See id.* at 118. The Supreme Court nevertheless held that the widow could not recover on a substantive due process theory, reaffirming that there is no general constitutional duty on state actors to protect citizens from harm. *Id.* at 126. The Court held that this general rule applied even in the context of government employment and that a government employer owed no constitutional duty to provide its employees with a safe working environment. *Id.*

B.   **Plaintiffs' Substantive Due Process Theory Fails Under *DeShaney* and *Collins*.**

Based on *DeShaney* and *Collins*, the County Defendants argue that Plaintiffs have not stated a substantive due process claim. They emphasize that the alleged misconduct concerns sexual assaults that were committed by J.T., a private actor, and, under *DeShaney*, this defeats Plaintiffs' attempt to assert a constitutional violation against the County or its agents. (ECF No. 20 at 6–8.) They also argue that Plaintiffs cannot avoid this fact by alleging that the County Defendants breached a constitutional duty by failing to warn the Plaintiffs of the risks of fostering J.T., a claim that is inconsistent with *Collins*. (*Id.* at 8–10.)

The Court agrees that Plaintiffs have not alleged facts sufficient to state a substantive due process claim. First, and most importantly, Plaintiffs' have not alleged a violation of a fundamental right. Neither the Supreme Court or Seventh Circuit has ever recognized a fundamental right in foster parents or foster siblings to be free from unnecessary harm or to be made aware of the risks of fostering. And both higher courts have specifically cautioned against expanding the recognized set of fundamental rights actionable on a substantive due process theory in this way. *See Robbin*, 108 F.4th at 589 (citing *Campos*, 932 F.3d at 975); *Glucksberg*, 521 U.S. at 720. While Plaintiffs likely have compelling state law tort claims, they cannot transform those claims into constitutional violations by packaging them in a substantive due process wrapper. Moreover, the fundamental rights that Plaintiffs invoke are inconsistent with the holdings in *DeShaney* and *Collins*. Again, the assaults alleged in the complaint were committed by J.T., not by any state actor. The Supreme Court made clear in *DeShaney* that there is no constitutional right to be protected from assaults by a private actor and county officials do not violate the constitution even if they are negligent in

failing to act to protect children from such an assault. 489 U.S. at 201–02. Plaintiffs' effort to hold the County Defendants liable for their failures to act to prevent J.T. from sexually abusing the family's minor daughters is the same theory that the Supreme Court rejected in *DeShaney*.

Plaintiffs try to distinguish their case by arguing that "the state had not proximately contributed to the boy's abuse" in *DeShaney*, whereas, here, the County Defendants "did proximately contribute" to the abuse. (ECF No. 22 at 11.) This misunderstands the problem with their claim. The flaw in Plaintiffs' complaint is that Plaintiffs have not identified a violation of any fundamental right; causation is irrelevant. *See Weiland v. Loomis*, 938 F.3d 917, 920 (7th Cir. 2019) ("[T]he Due Process Clause generally does not condemn official negligence."). Under *DeShaney*, a plaintiff cannot maintain a substantive due process claim based on allegations that a government actor improperly disregarded the danger posed by a private citizen who then causes harm to the life of another citizen. Plaintiffs' asserted rights "to be free from unnecessary harm" and "to be made fully aware of the risks of fostering" J.T. are directly contrary to the interpretation of the Due Process Clause given in *DeShaney*. If the plaintiff in *DeShaney* had no constitutional right to be free from the harm caused by his physically abusive father, Plaintiffs here similarly have no right to be free from the harm caused by their sexually abusive foster sibling J.T.

Plaintiffs' claim is also inconsistent with *Collins*. The widow in that case asserted that her husband had a substantive due process right to a reasonably safe working environment, and the Court rejected that theory. *Collins*, 503 U.S. at 126. Plaintiffs' claimed right to a reasonably safe foster parenting environment fails based on the same logic. If a city has no constitutional duty to provide its employees with a safe working environment, a county and its agents have no constitutional duty to provide foster families with a safe foster parenting environment. Plaintiffs' unhelpfully attempt to distinguish *Collins* by maintaining that, as a foster family, they are not state employees. (ECF No. 22 at 13.) This fact is irrelevant. The Supreme Court specifically stated in *Collins* that the "employment relationship . . . is not of controlling significance." 503 U.S. at 119. Moreover, if a state or one of its subdivisions have no duty to their actual employees, it is hard to imagine why they would have a duty to private citizens who voluntarily agree to serve as foster parents or foster siblings. If the Due Process Clause does not entitle a government employee to affirmative governmental aid, it also does not entitle a foster family to such aid.

### C. Plaintiffs Theory Does Not Fit in the Limited Exceptions Recognized in *DeShaney.*

Plaintiffs try to save their federal claims by fitting them within the "special relationship" and the "state-created peril" exceptions recognized in *DeShaney*. (ECF No. 22 at 14–21.) The caselaw confirms, however, that neither exception applies to the facts Plaintiffs allege.

Under the special relationship exception, an individual has an affirmative substantive due process right to governmental aid "when the State takes a person into its custody and holds him there against his will." *DeShaney*, 489 U.S. at 199–200. This exception has no application here because Plaintiffs were never in the custody of the County Defendants. Plaintiffs observe that the Seventh Circuit has applied this exception in cases involving foster children. (ECF No. 22 at 13–14, 15–19.) This observation, while true, ignores that in every case Plaintiffs cite, the substantive due process plaintiff was *the foster child*. *See Waubanscum v. Shawano County*, 416 F.3d 658 (7th Cir. 2005); *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788 (7th Cir. 2003); *Lewis v. Anderson*, 308 F.3d 768 (7th Cir. 2002); *K.H. Through Murphy v. Morgan*, 914 F.2d 846 (7th Cir. 1990). A foster child whom the state has placed in the custody of a foster family fits directly within this exception; foster parents and foster siblings do not.

Plaintiffs also misunderstand the nature of the special relationship exception when they contend that once J.T. was placed in their home, "they could not kick [him] out onto the streets." (ECF No. 22 at 13.) The exception applies "when the State takes a person into its custody and holds him there against his will," with the Constitution then imposing a duty to assume some responsibility for the person's "safety and general well-being." *DeShaney*, 489 U.S. at 199–200. This is simply not the case with respect to the Plaintiffs. There is a material difference between a foster child and foster parents. A foster child's custody and placement are controlled by the state; the state does not force anyone to be a foster parent. Once Plaintiffs voluntarily agreed to participate in fostering J.T., they took on the responsibility of caring for him and could not abandon him at their whim, but this does not mean they were in state custody. The special relationship exception has no application here.

Plaintiffs also seek to bring their claims within the state created danger exception. (ECF No. 22 at 19–21); *see also DeShaney*, 489 U.S. at 201. As with much substantive due process law, the Seventh Circuit has emphasized the limited nature of this exception and held that an act that increases a private danger does not by itself alter *DeShaney*'s holding that substantive due process

generally does not confer a right to governmental aid. *See Weiland*, 938 F.3d at 919. The danger must also be created by the government, not the private actor. *See Nelson*, 992 F.3d at 605. And the government's conduct must be "egregious," bordering on "criminal recklessness." *Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019) (citations omitted). Even gross negligence that gives rise to private violence is insufficient to invoke the state created danger exception. *See Nelson*, 992 F.3d at 605 (citing *Walker v. Rowe*, 791 F.2d 507, 510 (7th Cir. 1986)). The Seventh Circuit has also warned lower courts to "step back" before applying this exception and ask "whether local jurisprudence matches the instructions from higher authority." *Weiland*, 938 F.3d at 921. Thus, the Court cannot apply this exception if it would conflict with *DeShaney*. *See id.*

Plaintiffs do not explain how the exception could apply here but not in *DeShaney*. Even if Plaintiffs' speculation that the County Defendants had prior notice of J.T.'s problematic behaviors is confirmed, their failure to act on that notice is no different than the *DeShaney* defendants' failure to act on the notice they received of the father's prior abusive conduct in that case. Because Plaintiffs claims are directly controlled by *DeShaney*, the state created danger exception cannot apply here. If it did, *DeShaney* itself would have been decided differently. For that reason alone, Plaintiffs' argument fails.

Plaintiffs insist that the County Defendants created the danger that befell the Plaintiffs. (*See* ECF No. 22 at 19–21.) They liken their case to *Reed v. Gardner*, in which the Seventh Circuit applied the exception in the context of police officers who allowed a clearly intoxicated passenger to drive a car after the arrest and detention of the original driver. 986 F.2d 1122, 1124–25 (7th Cir. 1993). After the officers' intervention, the intoxicated passenger drove the car and crossed the center line, crashing into the plaintiffs' car and causing the death of a pregnant mother and serious injuries to a child, both passengers in the plaintiffs' vehicle. *Id.* at 1123–24. The Seventh Circuit noted that, while the officers would have been under no constitutional duty to intervene had they simply watched an intoxicated person stumble around and then drive off, once they intervened and removed the original driver from the road, they had a constitutional duty to prevent the drunken and dangerous driver from taking the wheel. *Id.* at 1125. Having allegedly "changed a safe situation into a dangerous one," the officers had created a dangerous situation, and the state created danger exception recognized in *DeShaney* applied. *Id.* at 1125, 1127. Plaintiffs maintain that, "[j]ust as the police in *Reed* [were] reasonably expected to know that an intoxicated person would be incapable of safe driving, [the County Defendants] similarly possessed knowledge that

J.T. would be incapable of safely co-existing" with other children. (ECF No. 22 at 20.) Plaintiffs misunderstand *Reed*. It was not the officers' knowledge that an intoxicated person would be an unsafe driver that made for a potential constitutional violation in *Reed*, but their affirmative act of removing a safe driver and failing to prevent a clearly intoxicated driver from taking over the wheel. 986 F.2d at 1125. Unlike the officers in *Reed*, the County Defendants are not alleged to have taken any steps to increase the risk of danger to the Plaintiffs. Rather, the complaint alleges that the County Defendants failed to act even in the face of Plaintiffs' requests for J.T.'s background information and family therapy. The risk of J.T. assaulting the other children remained the same before the County Defendants failed to act and after they failed to act. *Reed* is inapplicable, and so is the state created danger exception.

## II. Because Plaintiffs' Federal Claims Fail, the Court Will Not Exercise Supplemental Jurisdiction Over Their Remaining State Law Claims.

With Plaintiffs' Section 1983 and *Monell* claims dismissed, their remaining claims all arise under Wisconsin law. (ECF No. 1 ¶¶66–72, 84–116.) Plaintiffs can maintain those claims in this Court solely under the Court's supplemental jurisdiction. *See* 28 U.S.C. 1367(a). The County Defendants therefore urge the Court to release its jurisdiction over the remaining state law claims. (ECF No. 20 at 19.) Indeed, the general rule is that "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)); *see also Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir. 2001) (holding that while the district court could have exercised supplemental jurisdiction over state law claims after dismissing all federal claims, it was not required to do so). Plaintiffs have provided no basis for deviating from this basic approach. (*See* ECF No. 22 at 24.) Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, which they may pursue in state court if they wish.

## CONCLUSION

In the end, the Court has substantial sympathy for Plaintiffs. They agreed to take on the burden of becoming a foster family and have suffered significant injuries as a result. But, as the Supreme Court took pains to emphasize in *DeShaney*, constitutional interpretation and application of substantive due process ought not be driven by emotions or heartbreaking facts. If Plaintiffs

prove their allegations, they will very likely prevail on state law tort claims against the County Defendants.  But as both the Supreme Court and the Seventh Circuit have emphasized, a tort committed by the County Defendants does not necessarily make a constitutional violation.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss, ECF No. 19, is **GRANTED** with respect to Plaintiffs' Section 1983 claim and *Monell* claim.  The Court relinquishes its jurisdiction over Plaintiffs' remaining claims, and the case is **DISMISSED.**  The Clerk is instructed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 21, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
